**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SHAMIA DUNCAN

    Plaintiff

v.                                                        Civil Case No. L-10-2097

UNITED STATES OF AMERICA

    Defendant

o0o
**MEMORANDUM**

This case arises out of the unintended collision of a 1992 Honda Accord and a United States Postal Service truck. Each side faults the other's negligent motoring, and each moves for summary judgment as to liability. See Docket Nos. 9 (Pl.'s Mot Summ. J) and 14 (Def.'s Cross-Mot. Summ. J.). Because Maryland subscribes to the law of contributory negligence, and because the Plaintiff must bear some portion of the blame, judgment must go to the Defendant.

### I. BACKGROUND

The material facts in this case are not in dispute. Because no third-party witnesses have offered evidence, the facts as outlined below are drawn from the deposition testimony of the parties and from photographs of the vehicles.

Liberty Road runs roughly east-west through the town of Milford Mill, Maryland. It is a thoroughfare of medium size, with two lanes running in each direction, split by a shared center turn lane. St. James Road is a quiet and tree-lined residential street running roughly north-south, one lane in each direction. At the intersection of the two, drivers on St. James encounter stop

1

signs giving right-of-way to those travelling on Liberty.

A block to the east one encounters the intersection of Liberty Road and Rolling Road, which is controlled by a traffic signal. Because long red lights often back up traffic on Liberty for a block or more, a sign at Liberty's crossing with St. James sternly admonishes, "DO NOT BLOCK INTERSECTION."

On November 5, 2009, Carl Barnette was making his regular delivery rounds for the United States Postal Service. He drove a standard Postal Service truck of the type often seen in the suburbs, around the size of a minivan, with the steering wheel on the right-hand side. Barnette's route took him north on St. James. When he reached Liberty, which he intended to cross, he stopped at the stop sign. Traffic was backed up but the drivers eastbound on Liberty, obedient to the signage, had left the intersection clear. Aware of his obligation to yield to cars proceeding on Liberty, Barnette made eye contact with the drivers waiting to cross the intersection when traffic resumed its flow. Both waved him through. He checked the center turn lane and found it empty. Barnette inched out and proceeded across Liberty.

Meanwhile the Plaintiff, Shamia Duncan, was sitting in the same motionless eastbound traffic. She was four or five cars back from St. James. In a block and a half, a left turn onto Rolling Road would take her to her brother's house. As she waited for traffic to move, however, her nearly 20-year-old Honda began to overheat. The temperature gauge shot up and smoke began to seep from the hood. This was not the first time, and Duncan knew that she had to find a place to pull over and let her engine cool. Seeing the empty center lane, Duncan pulled into it and proceeded on at around 15 miles per hour, intending to make a left on St. James. She did not notice, however, that the cars in the through lanes had left a gap for traffic entering from her right. Neither driver saw the other until Duncan hit Barnett's truck square in the side.

2

## II. LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

## III. ANALYSIS

The drivers' accounts of the accident, as outlined above, contain no incompatibilities. Because neither party saw the other prior to impact, each must be the authority as to his or her own behavior. The sole issue for resolution by the Court is who, if anyone, was negligent as a matter of law. Because the Court finds that Duncan was contributorily negligent, her case must fail.

In suits brought against the United States under the Federal Torts Claims Act, 28 U.S.C. §§ 2671–80, and 28 U.S.C. §1346(b)(1), the "law of the place where the act or omission

occurred" governs. 28 U.S.C. §1346(b)(1). Because the accident occurred in Maryland, Maryland tort law must resolve the case.

Maryland is one of the few states that adhere to the doctrine of contributory negligence as a complete bar to recovery. See Ramos v. Southern Maryland Electric Cooperative, Inc., 996 F. 2d 52, 54–55 (4th Cir. 1993). Maryland law defines contributory negligence as "the failure to observe ordinary care for one's own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." Menish v. Polinger Co., 277 Md. 553, 559 (1976) (citations omitted). The degree of a plaintiff's negligence is immaterial. Reid v. Washington Overhead Door, Inc., 122 F. Supp. 2d 590, 593 (D. Md. 2000). "While contributory negligence is ordinarily a jury question, the Maryland Court of Appeals has established that a plaintiff can be contributorily negligent as a matter of law when there is no genuine dispute as to the plaintiff's own negligence." Id. (citing Driver v. Potomac Elec. Power Co., 247 Md. 75 (1967)). "Maryland courts have not hesitated to find a plaintiff contributorily negligent as a matter of law where common experience reveals the foreseeable dangers of the plaintiff's actions." Id. at 594 (discussing cases). A plaintiff must "foresee what common experience tells may, in all likelihood, occur and [] anticipate and guard against what usually happens." McManamon v. High's Dairy Products Corp., 230 Md. 370, (1963).

The parties have spent considerable time debating the applicability of Maryland's so-called boulevard rule, and whether the rule is modified by the presence of a sign that enjoins blocking the box. The boulevard rule, whose purpose is to expedite movement of traffic by favoring certain roads over which traffic may proceed with minimal disruption, generally gives right of way to all traffic on the boulevard and makes it the duty of drivers approaching from side

4

streets to stop and yield right of way.  Sun Cab v. Cusick, 209 Md. 354, 359 (1956).  Because Liberty Road is a favored highway, requiring those approaching it on St. James Road to stop and yield right of way, the rule would seem to apply in this case.  It makes no difference, however, because the boulevard rule does not insulate a driver from his own contributory negligence.  It "does not mean that the traveller [*sic*] on the favored highway has an absolute, unqualified and complete right of way at all times and under all circumstances over persons who have lawfully entered the street, nor that he can proceed thereon in blind indifference to the danger to which his progress may expose others."  Greenfeld v. Hook, 177 Md. 116, 130 (1939).  See also Government Employees Ins. Co. v. Group Hospitalization Medical Services, Inc., 322 Md. 645, 652–53 (1991) (recognizing that Maryland has superseded by statute the initial formulation of the boulevard rule, which "virtually precluded a successful defense on the part of the unfavored driver").

      Were the case at bar to proceed to trial, no reasonable jury could conclude that Duncan shares no blame for the accident.  Deposition testimony established that she was familiar with the relevant stretch of Liberty Road and drove the route often.  Considering that traffic backing up from the Rolling Road stoplight was a common phenomenon, and the presence of a "DO NOT BLOCK THE INTERSECTION" sign, a reasonably prudent individual would have slowed and checked for traffic coming from the right before making a left-hand turn onto St. James.  Duncan, however, never saw a gap in the traffic and never saw Barnett's mail truck until the moment of impact.  Moreover, the vehicles did not meet at an angle, nor did Garrett's truck strike Duncan as she made her turn.  Rather, Duncan hit the truck full on its left (passenger) side.  This leads to the inescapable conclusion that she either did not look to her right at all, or did so in a cursory and inefficacious manner.  Notwithstanding that Duncan had right-of-way, she failed to

exercise due care as a matter of law, and this failure was a contributing cause to the accident.[1]
See Johnson v. Gratch, No. HAR 91-2409, 1992 WL 138366 at * 2 (D. Md. June 10, 1992) (recognizing that a pedestrian is contributorily negligent as a matter of law if he fails to look for vehicular traffic or, having looked, fails to see an approaching vehicle.). Because Duncan's negligence is conclusively established and bars her recovery, the Court need not reach the issue of whether Barnett was also negligent.

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT the Defendant's Motion for Summary Judgment (Docket No. 14) and DENY the Plaintiff's Motion for Summary Judgment (Docket No. 9).


Dated this 11th day of July, 2011

/s/
_____
Benson Everett Legg
United States District Judge

---

[1] The Defendant also urges that Duncan was contributorily negligent because "she manifestly did not obey the 'Do Not Block Intersection'". Def.'s Mot. Summ. J. 9, Docket No. 14-1. This argument fails the straight face test. Duncan was at liberty to proceed through the intersection and make her turn, and might have done so without impediment; the only thing that caused her to block the intersection was the accident itself. The Defendant might as plausibly argue that a driver stopped at a red light is guilty of running it when he is hit from behind and pushed into the intersection.